IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDWARD MICHAEL LIBMAN,

    Plaintiff,

      v.

CITY OF AVONDALE ESTATES, a
Georgia Municipal Corporation, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-2294-TWT

## OPINION AND ORDER

This is a civil rights action brought pursuant to 42 U.S.C. § 1983.  It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 25] and the Plaintiff's Request for Oral Argument [Doc. 47].  For the reasons set forth below, the Defendants' Motion for Summary Judgment is GRANTED.

## I.  BACKGROUND

Plaintiff Edward Michael Libman alleges that he was unlawfully arrested on a charge of theft by receiving stolen property by Defendant Russell Tweed, a former sergeant with the City of Avondale Estates Police Department.  On June 6, 2003, Mr. Stan Pike reported to Sergeant Tweed that a yellow Bosch jackhammer had been taken from his residence.  Pike believed that one of his employees had stolen the

jackhammer. He knew that his employees sometimes pawned items at Pawn America. Based on his suspicions, Pike went to Pawn America in an effort to locate his jackhammer. Libman, the manager of Pawn America, checked the computer and informed Pike that none of his male employees had pawned a jackhammer. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 6, at 26-27, 42.) Sergeant Tweed accompanied Pike on another visit to Pawn America. At that time, Sergeant Tweed informed a Pawn America employee that he was investigating a burglary and inquired whether they had any jackhammers in on pawn. The employee denied having any jackhammers. (Tweed Dep. at 35, 40; Pl.'s Br. in Opp'n, Ex. 6, at 27-28.) During a follow-up visit, Sergeant Tweed was again told by a Pawn America employee that there were no jackhammers in on pawn. (Tweed Dep. at 85-86.)

Pike's suspicions that one of his employees had taken the jackhammer were confirmed, and he learned that the employee's girlfriend, Benita Ross, had in fact pawned the tool at Pawn America. Ross accompanied Pike to Pawn America and redeemed the pawn ticket in exchange for the jackhammer. However, Pike was required to pay $125.00. On June 11, 2003, after being notified that the jackhammer had been retrieved, Sergeant Tweed attempted to obtain a copy of the pawn ticket from Pawn America in order to close his investigation. According to Sergeant Tweed, a Pawn America employee offered no explanation for her refusal to provide him with

the pawn ticket.  Sergeant Tweed asked for the manager and, for the first time during his investigation, he spoke to Libman.  He alleges that he explained to Libman that he needed the ticket to close a burglary investigation but Libman was uncooperative and began yelling.  The parties agree that the conversation escalated into a screaming match but each claims that the other was angry and defiant.  At some point during the conversation, Libman informed Sergeant Tweed that a release from the DeKalb County Pawn Desk was required before he could provide him with a copy of the pawn ticket.  Sergeant Tweed did not have a release, and Libman refused to turn over the ticket.  Later that day, Sergeant Tweed called Pawn America to learn the names of the employees involved with the jackhammer and pawn ticket but Libman refused to provide any information.  According to Libman, based upon the heated conversation and the phone call, he felt as if Sergeant Tweed was trying to intimidate him.  As a result, Libman faxed a complaint letter to Defendant Jeff Tarpley, the Chief of Police for the Avondale Estates Police Department.  In his complaint, Libman stated that Sergeant Tweed had been belligerent in his demands for the pawn ticket.  Libman also indicated that he feared retribution from Sergeant Tweed.  (Pl.'s Br. in Opp'n, Ex. 9.)

Sergeant Tweed contends that he suspected that Libman was trying to cover something up based upon: (1) his two visits to Pawn America where the employees denied having the jackhammer, despite the fact that the tool was later redeemed from

Pawn America; (2) the verbal altercation between Sergeant Tweed and Libman; (3) Libman's refusal to divulge his name; (4) Pawn America requiring Pike to pay to retrieve the jackhammer; and (5) Libman's general demeanor and attitude during the investigation. According to Sergeant Tweed, he felt that Libman, as manager of Pawn America, was responsible for the actions of his employees and would be the only employee adversely affected by admitting that stolen property had been taken in on pawn. Following a discussion with Chief Tarpley, Sergeant Tweed presented this information to a DeKalb County magistrate judge. The magistrate judge issued a warrant for Libman's arrest for theft by receiving stolen property.

Libman was arrested on June 11, 2003, and remained in custody for three days. On August 8, 2003, Libman, represented by counsel, attended his preliminary hearing in the DeKalb County Magistrate Court. The magistrate judge heard testimony from Sergeant Tweed and several witnesses on behalf of Libman. At some point during the hearing, after indicating that the evidence was potentially sufficient to bind Libman over to the Grand Jury, the magistrate judge proposed a compromise whereby the criminal charges would not be bound over and would be dismissed provided that Libman released Sergeant Tweed from any civil liability for damages arising out of the arrest and prosecution. (Franco Aff. ¶¶ 7-8; Suppl. Franco Aff. ¶ 8.) The magistrate judge also stated that Libman would be required to pay $125.00 in

restitution to Pike.[1]  (Franco Aff. ¶ 8.)  Libman agreed, albeit begrudgingly, to the terms of the magistrate judge's compromise and executed the release.  (See Libman Dep. at 121, 140, Ex. 4; Franco Aff. ¶ 10.)  The magistrate judge then issued an order dismissing the charges and ordering Libman to pay restitution. (Libman Dep., Ex. 4.)

Libman alleges that his Fourth and Fourteenth Amendment rights were violated because Sergeant Tweed presented false testimony to the magistrate judge in support of the arrest warrant application.  He asserts this claim, pursuant to 42 U.S.C. § 1983, against Sergeant Tweed, Chief Tarpley, and the City of Avondale Estates.  Libman also asserts claims for defamation and malicious prosecution against Sergeant Tweed. The Defendants move for summary judgment on these claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

---

[1]Libman claims to have no recollection of the restitution term as part of the compromise.  However, Leonard Franco, his counsel, testified that restitution was included as a term in the judge's proposal.  (Franco Aff. ¶ 8.)  This contention is borne out by the court's order, which dismisses the charges against Libman and states that he is to pay $125.00 to Stan Pike.  (Libman Dep., Ex. 4.)

(1970).  The party seeking summary judgment must first identify grounds that show

the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  DISCUSSION

### A.    Sergeant Tweed

Libman asserts a claim pursuant to 42 U.S.C. § 1983, alleging that his Fourth

and Fourteenth Amendment rights were violated because Sergeant Tweed knowingly

provided false information in support of the application for an arrest warrant for

Libman.   Sergeant Tweed contends, however, that he did not provide any false

information to the magistrate judge.  He further argues that he is entitled to summary

judgment because Libman executed an agreement releasing Sergeant Tweed from any

civil liability in exchange for dismissal of the charges against him.  The release states

as follows:

> The undersigned, Edward Michael Libman, for sufficient consideration
> does hereby releases [sic] Sgt. Russell [Tweed][2] from any civil liability

_____

[2]The original release purports to release a "Sgt. Russell."  (Libman Dep., Ex.
3.)  However, Leonard Franco, the Plaintiff's counsel and the drafter of the release,
testified that it was his intent and the intent of the parties that the release be in favor
of "Sgt. Russell Tweed."  (Franco Aff. ¶ 11.)

for the June 11th, 2003, criminal prosecution, being Warrant No. 03W92181. For said Release it is the understanding of the parties that all criminal charges agains [sic] Edwar [sic] Michael Libman are Dismissed by separate order of the DeKalb County Magistrate Court.

(Libman Dep., Ex. 3.)   It is undisputed that Libman signed the release but he challenges its enforceability.  If the release is valid, Sergeant Tweed is entitled to summary judgment on Libman's section 1983 claim.  Conversely, if the release is not enforceable, the merits of Libman's claim must be addressed.  Because the release is a threshold issue, the Court will begin by addressing the release.

1.   <u>Release-Dismissal Agreement</u>

A release-dismissal agreement results when a criminal defendant releases his right to file a civil rights action in return for the dismissal of pending criminal charges. In <u>Town of Newton v. Rumery</u>, 480 U.S. 386 (1987), the Supreme Court addressed the enforceability of such releases and held that they are not *per se* invalid. <u>Rumery</u>, 480 U.S. at 392.  "In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." <u>Id.</u> at 394.  Thus, release-dismissal agreements must be assessed on a case-by-case basis and will be enforced if the agreement satisfies three criteria: (1) it was entered into voluntarily; (2) there is no evidence of prosecutorial misconduct; and (3) the enforcement of the release is in the public interest.  <u>Id.</u> at 398, 401.  The <u>Rumery</u>

plurality set forth the following factors to be considered in determining whether the release is voluntary: (1) the knowledge and experience of the criminal defendant; (2) whether the defendant was represented by counsel; (3) whether the defendant's attorney drafted the agreement; (4) whether the defendant was in custody at the time of signing the agreement; and (5) whether the defendant had time to consider the agreement. Id. at 394 (plurality opinion).  In her concurrence, Justice O'Connor suggested two additional factors: (6) the nature of the criminal charges; and (7) whether the agreement was formed under judicial supervision.  Id. at 401-02 (O'Connor, J., concurring in part and in the judgment).  Prosecutorial misconduct arises when, for example, "police officers file unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up his cause of action; or where a prosecutor, upon discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers." Coughlen v. Coots, 5 F.3d 970, 974 (6th Cir. 1993).  However, evidence of an independent, legitimate prosecutorial reason for the release can establish the absence of prosecutorial misconduct.  Rumery, 480 U.S. at 398.  Examples of legitimate prosecutorial reasons include: (1) the cost and burden of litigating lawsuits; (2) docket control and the efficient resolution of criminal charges; (3) the avoidance of questionably valid civil rights litigation; and (4) the strength of evidence of

criminal conduct is doubtful even though charges were filed in good faith.  See id. at 395-96; Gonzalez v. Kokot, 314 F.3d 311, 320 (7th Cir. 2002); Coughlen, 5 F.3d at 975.   Finally,  the  public  interest  factor  requires  the  court  to  determine  that "enforcement  of  this  agreement  would  not  adversely  affect  the  relevant  public interests."  Rumery, 480 U.S. at 398.  In making this determination, the court should weigh the policies in favor of releases, e.g., the burdens associated with defending marginally meritorious civil rights claims and the deference given to prosecutorial decisions; and the policies against releases, e.g., the vindication of civil rights and the potential  for  "prosecutors  to  bring  frivolous  charges,  or  to  dismiss  meritorious charges, to protect the interests of other officials."  Id. at 394-96.

The party seeking enforcement of a release-dismissal agreement has the burden of proving that the release was entered into voluntarily, that there was no prosecutorial overreaching,  and  that  the  enforcement  of  the  waiver  furthers  the  public  interest. Rumery, 480 U.S. at 401 (O'Connor, J., concurring in part and in the judgment); id. at 417 (Stevens, J., dissenting); MacBoyle v. City of Parma, 383 F.3d 456, 459 (6th Cir. 2004); Gonzalez, 314 F.3d at 317; Lynch v. City of Alhambra, 880 F.2d 1122, 1126 n.5 (9th Cir. 1989).  Libman argues that he did not enter into the agreement voluntarily because the charges against him were serious and he was only given a few minutes in which to consider the "take it or leave it proposition."  (Pl.'s Br. in Opp'n

at 18.)  He further argues that there is evidence of prosecutorial misconduct because: (1) Sergeant Tweed lacked probable cause to support Libman's arrest; and (2) the magistrate judge required the release in order to protect Sergeant Tweed. As evidence that the release was entered into voluntarily, Sergeant Tweed relies upon the undisputed facts that Libman was represented by counsel who drafted the agreement and the fact that the agreement was entered into under the supervision of a judge. Libman's argument that there was the sort of prosecutorial misconduct that invalidates such an agreement is without merit.  Libman made a deal to get the charges against him dropped.  The Court is not persuaded that he should be able to change his mind now.

> 2.   Qualified Immunity

Libman alleges that Sergeant Tweed violated his Fourth Amendment rights by knowingly providing false information in support of the application for an arrest warrant.  In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a federal right guaranteed by the Constitution or federal statutes.   Qualified immunity, however, protects government officials from individual liability for injuries arising out of an official's discretionary acts if the act did not violate clearly established statutory or constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Before a

section 1983 claim will be barred by qualified immunity, the government official must prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts occurred.  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  If the defendant establishes that he was exercising discretionary authority, the burden shifts to the plaintiff to prove that the defendant is not entitled to qualified immunity.  Id.  In order to meet this burden, the plaintiff must show that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation.  Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)).  A government official is shielded from suit by qualified immunity if the conduct did not violate a constitutional right or if the right was not clearly established.  Stavropoulos v. Firestone, 361 F.3d 610, 618 (11th Cir. 2004).

It is undisputed that Sergeant Tweed was acting within his discretionary authority when he applied for a warrant to arrest Libman.  Therefore, the burden rests on Libman to prove that Sergeant Tweed violated his clearly established constitutional right.  The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause.  Franks v. Delaware, 438 U.S. 154, 164 (1978).  Factual statements in support of a warrant application are required to be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  Id. at 165.  Thus, a police

officer violates an individual's Fourth Amendment right by knowingly making perjurious or recklessly false statements in support of a warrant application. <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1083 (11th Cir. 2003) (<u>citing</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 346 (1986)); <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1554 (11th Cir. 1994) (<u>citing</u> <u>Franks</u>, 438 U.S. at 156, 165-71). An officer is not entitled to qualified immunity "if a reasonable police officer would have known that [the] testimony was not just negligently false, but recklessly so." <u>Holmes</u>, 321 F.3d at 1083.

Libman alleges that Sergeant Tweed knowingly provided perjurious testimony to the magistrate judge in support of the warrant application based upon a handwritten notation at the bottom of the arrest warrant affidavit that states: "officer had talked to [Defendant and] he denied having the item but had it in on pawn." (Pl.'s Br. in Opp'n, Ex. 7.) It is undisputed that Sergeant Tweed did not speak with Libman until June 11, 2003, after the jackhammer had been redeemed by Pike, and it is further undisputed that Libman never denied to Sergeant Tweed that the jackhammer was at Pawn America. Apart from the disputed statement, however, there was arguable probable cause for Libman's arrest. A police officer is not deprived of qualified immunity merely by showing that some inconsequential fact is recorded incorrectly in the warrant. Sergeant Tweed is entitled to summary judgment on his claim of qualified immunity.

B.    <u>Chief Tarpley</u>

Libman alleges that Chief Tarpley,[3] as a supervisory employee, is liable for the alleged unconstitutional acts of Sergeant Tweed.  Supervisory officials cannot be held liable for the unconstitutional acts of their subordinates on the basis of *respondeat superior*. <u>Miller v. King</u>, 384 F.3d 1248, 1261 (11th Cir. 2004).  Supervisory liability can be established in two ways: (1) the supervisory official personally participated in the alleged constitutional violation; or (2) there is a causal connection between the actions of the supervisory official and the alleged constitutional deprivation.  <u>Id.</u> Libman claims that Chief Tarpley "directly participated in the decision to arrest Plaintiff and expressly authorized the warrant and the arrest."  (Pl.'s Br. in Opp'n at 21.)  However, there is no evidence to support this contention.  Chief Tarpley testified that he did not make the decision to arrest Libman nor did he order Libman arrested. (Tarpley Dep. at 23; <u>see also</u> Tweed Dep. at 119-20.)  Rather, his involvement was limited to discussing the investigation with Sergeant Tweed and recommending that

_____

[3]Libman asserts this claim against Chief Tarpley in both his individual and official capacity.  Suits brought under section 1983 against an individual in his official capacity are equivalent to suits brought against the entity which the official represents. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1293 n.15 (11th Cir. 1999).  Thus, because Libman has also asserted his section 1983 claim against the City of Avondale Estates based upon Chief Tarpley's actions, the claim against Chief Tarpley in his official capacity is redundant and summary judgment is proper.  <u>See</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991).

Sergeant Tweed present the facts to a magistrate judge for a determination of probable cause.  (Tarpley Dep. at 15-16, 76.)  There is no evidence that Chief Tarpley personally participated in the application for or the issuance of the arrest warrant.  Chief Tarpley's limited involvement is insufficient to establish that he expressly authorized or caused Sergeant Tweed to obtain the warrant.[4]  Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1218 (11th Cir. 1995).

Because Chief Tarpley was not personally involved in obtaining the arrest warrant and did not make the alleged false statement in connection with the application, Libman must satisfy the "extremely rigorous" standard required to impose supervisory liability on individuals who did not personally participate in the alleged constitutional violation.  Braddy v. Florida Dep't of Labor & Employment, 133 F.3d 797, 802 (11th Cir. 1998).  Under this standard, the necessary causal connection may be established if: (1) the supervisory official fails to correct an alleged constitutional deprivation in the face of a history of widespread abuse that would put a responsible

---

[4]Libman asserts that Chief Tarpley reviewed the arrest warrant, which contained the alleged false statement, and is therefore liable because he ratified Sergeant Tweed's unconstitutional actions.  Chief Tarpley testified that he reviewed the case file and would have seen the warrant if it had been among the contents of the file; however, he had no independent recollection of ever having reviewed the document. (See Tarpley Dep. at 52.)  Moreover, when presented with the warrant at his deposition, Chief Tarpley was not even able to decipher the magistrate judge's notation associated with the allegedly false statement.  Thus, there is no evidence that Chief Tarpley ratified Sergeant Tweed's actions.

supervisor on notice of the need to correct the alleged deprivation; (2) the supervisory official's custom or policy results in deliberate indifference to constitutional rights; or (3) the facts support an inference that the supervisory official directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Miller, 384 F.3d at 1261 (quoting Braddy, 133 F.3d at 801); Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003).

Libman alleges that Chief Tarpley failed to investigate or supervise Sergeant Tweed following Libman's complaint regarding his fear of possible retaliation by Sergeant Tweed. He argues that there is a causal connection between these failures and Sergeant Tweed's actions in allegedly presenting false testimony in support of the warrant application. However, Libman has not established that there was a history of widespread abuse associated with improperly obtaining arrest warrants that would put Chief Tarpley on notice of the need to supervise Sergeant Tweed's application for the warrant. According to Libman, Chief Tarpley failed to follow the written policies for investigating citizen complaints. Thus, Libman claims that Chief Tarpley was deliberately indifferent to Libman's complaint. Presumably, Libman contends that had Chief Tarpley investigated the complaint he could or would have prevented Sergeant Tweed from improperly obtaining the warrant. However, simply failing to follow department policy regarding citizen complaints does not necessarily evidence

deliberate indifference, and Libman has not presented any evidence in support of this contention beyond his conclusory allegation.  Moreover, it appears from the record that Chief Tarpley did not even receive Libman's complaint letter until after Sergeant Tweed had secured the arrest warrant.  (Tweed Dep. at 168.)  Finally, there is no evidence that Chief Tarpley directed Sergeant Tweed to secure the arrest warrant in an allegedly unlawful manner or that he knew that Sergeant Tweed would do so.  Because Libman has failed to meet the rigorous standard of establishing a causal connection between the actions of Chief Tarpley and the alleged constitutional deprivation, Chief Tarpley is entitled to summary judgment.

     C.    City of Avondale Estates

Libman also asserts a section 1983 claim against the City of Avondale Estates, alleging that the City is liable for the actions of Chief Tarpley.  Like a supervisory employee, a municipality may not be held liable for the wrongful actions of its employees on a *respondeat superior* theory.  See Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Instead, to succeed on a section 1983 claim against a municipality, a plaintiff must demonstrate that a constitutional deprivation occurred: (1) pursuant to an officially promulgated policy; (2) as the result of a decision made by an official with final policymaking authority for the municipality; or (3) as a result

of actions taken pursuant to "custom" with the force of law, even though the custom has not received formal approval through official decisionmaking channels. Monell, 436 U.S. at 690-91. Furthermore, the plaintiff must establish that the municipal policy or custom was the "moving force" behind the deprivation of a constitutional right. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Thus, the plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.; see also Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[N]ot only must there be some degree of 'fault' on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation.").

Libman alleges that the City is liable based upon Chief Tarpley's failure to investigate Libman's complaint. He does not contend that the City or the police department has an officially promulgated policy authorizing citizens' complaints to be disregarded. Rather, he contends that Chief Tarpley's failure to investigate was "[d]ue to the 'deeply imbedded' practice of disregarding citizens' complaints against police officers and in failing to properly document and investigate them." (Pl.'s Br. in Opp'n at 22.) However, Libman has failed to present any evidence in support of

this allegation.  Libman also argues that the City is liable because the decision not to investigate the complaint was made by Chief Tarpley, a final policymaker.  He is correct in asserting that the actions of a final policymaker can represent official policy and, therefore, create liability for a municipality.  However, as discussed above, Libman has failed to establish any causal link between the failure to investigate and the alleged constitutional violation.  Thus, the City of Avondale Estates is entitled to summary judgment.

> D.   Defamation

Following Libman's preliminary hearing, Sergeant Tweed sent a letter to Stan Pike, stating, in pertinent part, that:

> I went to court last week on Libman from the Pawnshop.  The Judge did not agree with him charging you to buy your tool back, once they found out it was stolen.  He issued a court order for the refund of $125.00. Enclosed is a copy of the court order that you can take to the Pawnshop for reimbursement.

(Tweed Dep., Ex. 3.)  Based on this letter, Libman asserts a claim for libel *per se* against Sergeant Tweed.  "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."  O.C.G.A. § 51-5-1(a).  "Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality."  Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1351 (N.D. Ga. 2003); Webster

v. Wilkins, 217 Ga. App. 194, 196 (1995).  According to Libman, by stating that "[t]he Judge did not agree with him charging you to buy your tool back, once they found out it was stolen," Sergeant Tweed committed libel *per se* by implying that Libman had been found guilty of a crime.

In order to establish a claim of defamation, the plaintiff has the burden of proving that the statement is both false and malicious.  Jaillett v. Georgia Television Co., 238 Ga. App. 885, 888 (1999).  Generally, whether a published statement is defamatory is a question for the jury.  Wolf, 253 F. Supp. 2d at 1349 (citing Mead v. True Citizen, Inc., 203 Ga. App. 361, 362 (1992)).  However, the court may determine that a statement is or is not defamatory as a matter of law.  In considering whether the writing is defamatory as a matter of law, the court should "read and construe the publication as a whole" and consider "what construction would be placed on it by the average reader."  Id. at 1350 (quoting Mead, 203 Ga. App. at 362) (internal punctuation omitted).  When read as a whole, including the attached copy of the DeKalb County Magistrate Court's order, Sergeant Tweed's letter does not, as a matter of law, imply that Libman was found guilty of a crime.  It is undisputed that: (1) Pike's tool was stolen; (2) Libman was arrested for a crime relating to the theft; and (3) the magistrate judge ordered Libman to pay $125.00 in restitution to Pike. Truth is an absolute defense to a defamation claim.  O.C.G.A. § 51-5-6; McDonald v.

Few, 270 Ga. App. 671, 672 (2004).  Moreover, the letter neither states that Libman himself stole Pike's property nor does it state that Libman was found guilty of any crime.  Rather, the attached order makes expressly clear that all charges against Libman were dismissed.  (Tweed Dep., Exs. 3-4.)  Thus, the average reader would not understand Sergeant Tweed's letter to mean that Libman was found guilty of a crime. Summary judgment is proper.

       E.    <u>Malicious Prosecution</u>

Libman alleges that Sergeant Tweed is liable for malicious prosecution under Georgia law.  "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action."  O.C.G.A. § 51-7-40.  A plaintiff asserting a malicious prosecution claim, which is disfavored under Georgia law, has an especially heavy burden. <u>Sherrill v. Stockel</u>, 252 Ga. App. 276, 278-79 (2001); <u>Kaiser v. Tara Ford, Inc.</u>, 248 Ga. App. 481, 486 (2001).  In order to establish a claim of malicious prosecution, the plaintiff must show: (1) prosecution for a criminal offense instigated by the defendant; (2) issuance of a valid warrant, accusation, indictment, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff.  <u>Cox v. Turner</u>, 268 Ga. App. 305, 305-06 (2004).

Libman's malicious prosecution claim fails because he cannot establish the third element: termination of the underlying criminal prosecution in his favor.  It is well established under Georgia law that "where the termination of the prosecution has been brought about by compromise and agreement of the parties, an action for malicious prosecution cannot be maintained."  Gray v. Dental One Assocs., Inc., 269 Ga. App. 888, 889 (2004) (quoting Waters v. Winn, 142 Ga. 138, 140 (1914)); Sherrill, 252 Ga. App. at 279; see also Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998) ("Courts have further reasoned that only terminations that indicate that the accused is innocent ought to be considered favorable . . . Thus, courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution.") (internal punctuation and citations omitted).  Here, the charges against Libman were dismissed by the DeKalb County Magistrate Court. (Libman Dep., Ex. 4.)  However, this was done as a result of an agreement entered into by the parties. Specifically, the magistrate judge stated that he would dismiss the criminal charges on the condition that Libman execute an agreement releasing Sergeant Tweed from any civil liability arising out of Libman's arrest and prosecution.[5]  (Franco Aff. ¶ 8;

---

[5]As noted above, Libman's counsel testified that, as part of the compromise agreement, Libman was also required to pay restitution to Pike.

Suppl. Franco Aff. ¶ 8.)   Libman executed the release, and the magistrate judge

ordered the charges dismissed.  (See Libman Dep., Ex. 3 ("For said release it is the

understanding of the parties that all criminal charges agains [sic] Edwar [sic] Michael

Libman are Dismissed by separate order of the DeKalb County Magistrate Court.").)

Therefore, although the prosecution was terminated, because it was done so as a result

of a compromise and agreement, it was not terminated favorably to Libman.[6]  Gray,

269 Ga. App. at 889-90 (charges dismissed as a result of agreement of mutual release

of civil liability and community service was not termination of prosecution in

plaintiff's favor); Grand Union Co. v. Miller, 232 Ga. App. 857, 860 (1998), aff'd in

part and reversed in part on other grounds, 270 Ga. 537 (1999) (malicious prosecution

claim precluded because criminal prosecution terminated as a result of covenant not

to sue).  Summary judgment on the malicious prosecution claim is warranted.

IV.  CONCLUSION

---

[6]Citing Vadner v. Dickerson, 212 Ga. App. 255 (1994), Libman argues that the prosecution should be deemed terminated in his favor because he claims he is still subject to indictment for the dismissed charges and the prosecutor failed to promptly reinitiate the indictment.  However, Vadner is wholly inapposite.  In that case, rather than dismissing the charges as a result of a compromise and agreement, the magistrate court dismissed the criminal warrant without prejudice on jurisdictional grounds for lack of proper venue.  Vadner, 212 Ga. App. at 255-56.  It was based upon the dismissal on jurisdictional grounds that the court held that a prosecution may be deemed terminated in favor of the accused by reason of voluntary abandonment if the prosecutor does not diligently take action to recommence the prosecution.  Id. at 256.

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 25] is GRANTED. Because scheduling oral argument will add unnecessary delay to the litigation, the Plaintiff's Request for Oral Argument [Doc. 47] is DENIED.

SO ORDERED, this 28 day of February, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge